ROCKWELL ET AL., APPELLANTS, *v.* OHIO TURNPIKE COMMISSION, APPELLEE.

(No. 677—Decided October 11, 1954.)

*Messrs. Young & Young,* for appellants.
*Mr. John L. McCrystal* and *Mr. James L. Stegmeier,* for appellee.

DEEDS, J.  This is an appeal on questions of law from a judgment of the Court of Common Pleas of Erie County entered upon the verdict of a jury awarding compensation and damage to the appellant landowners in an appropriation proceeding by the appellee, Ohio Turnpike Commission.

The case is before this court for review upon the transcript of the record of the proceedings in the Court of Common Pleas, a bill of exceptions and the oral arguments and briefs of counsel for the respective

parties. The appellants will be referred to herein as the landowners and the appellee as the commission.

This court has given consideration to each of the appellants' six assignments of error. Nevertheless, in view of the conclusion which the court has reached that the judgment should be reversed and the cause remanded for a new trial, specific reference will be made herein only to the assignments as have been considered as well taken, as follows:

1. The court erred in rejecting evidence.

2. The court erred in refusing to instruct the jury before argument as requested by appellants.

3. The court erred in its general charge to the jury.

Assignments numbered 4 and 5 are considered as not well taken, as not being supported on the record. Number 6 relates to the overruling by the court of a motion for a new trial and requires no comment.

The extent or aggregate area of land being appropriated by the commission in the proceeding consists of approximately ten acres, about nine acres of which is a diagonal strip of land extending across and through the southwesterly part of the landowners' 96-acre farm. Such strip of land results in the isolation of two additional small areas, not thereafter being of any use or value to the landowners, and all of which has resulted in the creation of irregular boundary lines in the remaining land of the landowners.

In addition to the fee in the land appropriated, the application of the commission also includes specific and separate appropriations of two permanent easements for drainage purposes for the construction of drainage facilities consisting in part of one pipe, 72 inches in diameter, and one or more smaller pipes for carrying water, a portion of which facilities are to be constructed adjacent to and either under or partially above the surface of the remaining land of the landowners.

The application also included as being appropriated all rights to erect any billboard, sign, notice, poster or other advertising device on the remaining lands of the landowners, which advertising devices would be visible from the traveled portion of the turnpike. It is sufficient to state in reference to such attempted appropriation of advertising rights that the Supreme Court of the state has determined that the Turnpike Act does not authorize the commission to appropriate such billboard and advertising rights of a landowner. *Ellis* v. *Turnpike Commission* and *Solether* v. *Turnpike Commission,* 162 Ohio St., 86, 120 N. E. (2d), 719.

We will consider first the second assignment of error, as the first and third assignments relate to the subject of easements for drainage purposes and can be, with advantage, considered together. The second assignment is based upon the refusal by the trial court to give to the jury, in advance of the argument of counsel, four of the five special instructions requested by counsel for the landowners.

Three of those special instructions, requested and refused by the trial court, we find were not correct statements of the law and, therefore, the refusal to give such instructions was not prejudicial to the landowners.

Special instruction number 4 is as follows:

"The court instructs you that the owners herein are entitled to recover not only for the strip of land actually taken and appropriated by the Ohio Turnpike Commission but such owners are also entitled to recover damages for any injury directly and proximately resulting to the residue of the remainder of the property because of the appropriation and because of the severance of such strip of land from the residue. Your consideration of this, therefore, after you have determined and assessed the compensation to be paid

to the owners for the land actually taken and appropriated by the Ohio Turnpike Commission—you will then proceed further to determine and assess the damages to be paid to the owners by the Ohio Turnpike Commission for any injury directly caused to the residue or remainder of the property because of the severing and appropriation of such strip of land and in determining such damages to the residue of the property you may consider the relative location of the property which has been severed and taken with reference to the residue.''

We find that instruction number 4 was a correct statement of the law applicable to the issue to which it was pertinent and that the refusal of the court to give such instruction amounted to error prejudicial to the landowners.

*Cleveland & Pittsburg Rd. Co. v. Ball,* 5 Ohio St., 568, 21 A. L. R., 70; *Grant v. Village of Hyde Park,* 67 Ohio St., 166, 65 N. E., 891; *In re Appropriation of Easement for Highway Purposes,* 93 Ohio App., 179, 112 N. E. (2d), 411.

In considering the two remaining assignments of error, having reference to the exclusion by the court of certain testimony relating to probable damages resulting from the easements being appropriated for drainage purposes and error relating to the general charge of the trial court which failed to include a definition or explanation of the issues of fact presented by the specific appropriation by the commission of the two separate and independent easements for drainage purposes, it is a significant fact that such appropriations are in addition to the actual land taken, and are, also, independent of and in addition to the damage sustained by the landowners occasioned directly as a result of the land taken.

With further reference to that subject, this court

has been impressed by the lack of any reasonably clear proof in the record of the nature and character of the specific easements sought to be appropriated for drainage purposes, although it is apparent to this court that evidence and full information were available to either party and that it was the responsibility of both parties, in proceedings in which private property is being appropriated to a public use, to present proof of a character such as would fully and fairly apprise the court and jury of the extent and nature of the rights and property of the landowner which the commission was seeking to condemn and appropriate. 15 Ohio Jurisprudence, 888, Section 197; *Martin* v. *City of Columbus*, 101 Ohio St., 1, 127 N. E., 411.

This court does not undertake to suggest the manner in which such proof should be adduced, nevertheless we feel that it is appropriate to comment that obviously in the case before us there was, of necessity, evidence available consisting of plans, specifications and engineering information which would disclose clearly the character and extent of the proposed drainage facilities to be constructed, also the necessity and purpose of such facilities, so that the probable effect upon or damage to the property of the landowners could thereby be determined on a factual basis without conjecture, with the purpose of arriving at a just determination respecting the rights of the parties. Notwithstanding a lack of clear proof, of which, in the view of this court, the subject was susceptible, there was certain testimony offered and received by the court which, upon motion, was excluded, relating to probable damage resulting by reason of the easements for drainage purposes, which testimony this court considers to have been pertinent, relevant and competent, which was in part as follows:

"Q. Is there any outlet, that you know of naturally,

for the water that comes over that way? A. I have an outlet, but there is no outlet for the ditch that they are making. I have no outlet for the ditch. I call it a ditch. Maybe they don't.

"Q. Where it extends, is the land low or high? A. No, it runs on just an ordinary line.

"Q. Does it slope? A. I call it a natural pitch across there.

"Q. A natural place, and the jury saw it? A. Well, they could.

"Q. It was seeable yesterday. A. They could see it.

"Q. Now, in your opinion as a farmer, what do you think will happen, if that land gets soft? Will it be possible to use a tractor? A. No.

"Q. In your opinion what amount of land not appropriated will be taken by that as you testified? A. Well, there are several tile leading to the six-inch tile.

"Court: Just answer the question. Just a minute. A. My tile.

"Court: He asked you how many acres. A. O. K. I will say from ten to fifteen acres, if that is the question.

"Q. Now to go back, is there any other change proposed that you can see except the elevation."

Cross-examination by Mr. McCrystal:

"Q. Mr. Rockwell, what is the natural drainage, from the northeast? A. I would say practically that is correct.

"Q. None of these tile, as far as you know extend beyond the limits of the part shown in blue, which is the part being appropriated in fee simple? A. What do you mean?

"Q. The seventy-two inch tile and the twelve-inch tile are both contained within this blue strip? A. Not that I know of.

"Q. They don't run up there? A. They don't as far as I know. That has not been explained to me.

"Q. They don't as far as you know? A. They don't as far as I know.

"Q. Can you indicate to the court and jury which fifteen acres are affected by the drainage? A. Well, this here land back in here all my land. The water runs this way, and on some of the land, there will be water, and the tile runs down in here.

"Q. Will that water still run into that tile? A. Absolutely, only when you have a flood, your water will go in here (indicating) first, and you won't have a chance to get out there."

"* * *

"Q. Where is the water that falls over in this part of your farm (indicating on map). Where does that drain? A. In that tile.

"Q. This is the tile (indicating)? A. Yes.

"Q. Where does it drain? A. Right in there, where you are pointing.

"Q. Where does it go? A. It goes on until it gets to—it goes down this way a little and down through Koch's and Mrs. Ohlemacher's.

"Q. That is the way that the water goes now, before the turnpike? A. Yes.

"Q. The water goes down here (indicating)? A. My land up here (indicating) all naturally leads into one tile.

"Q. That is the way that the water goes that falls in this area? A. Yes.

"Q. And that is the natural drainage? A. Yes.

"Q. And as far as you understand it, it is to be an open ditch? A. That is what I call it.

"Q. It is not to replace any tile that are already there? A. They said nothing to me about it.

"Q. As far as you know? A. As far as I know, it doesn't."

This court finds that the action of the trial court in granting the motion of counsel for the commission, and thereby excluding the foregoing testimony and other testimony of like import from the consideration of the jury, was error prejudicial to the landowners.

It is the considered view of this court also that the specific appropriation by the commission of easements for drainage purposes presented a distinct and separate issue of fact which afforded the basis for compensation for the taking of the easements as well as the assessment of damages to the remaining property resulting from such taking, and that it was the duty of the trial court to make specific reference to such subject or issue so presented and to instruct the jury concerning a consideration of same.

The failure on the part of the trial court to separately define and specifically instruct the jury regarding such subject or issue of fact amounted to error prejudicial to the landowners. *Lake Shore Electric Ry. Co.* v. *Shepherd*, 48 Ohio App., 167, 192 N. E., 740; *Souder* v. *Hassenfeldt, Admx.*, 48 Ohio App., 377, 194 N. E., 47; *Baltimore & Ohio Rd. Co.* v. *Lockwood*, 72 Ohio St., 586, 74 N. E., 1071; *Simko* v. *Miller*, 133 Ohio St., 345, 13 N. E. (2d), 914.

Before concluding this opinion, in view of the questions which have been raised in the case before us for review relating to the admissibility and competency of evidence, we deem it appropriate to recognize and comment briefly concerning the confusion which has arisen with respect to the decision of this court in the case of *In re Appropriation of Easement for Highway Purposes, supra*. We consider that the law of that case as applicable to the fact issues raised therein was stated correctly in the syllabus of the reported decision as follows:

''1. In determining the amount of award to be made

to an owner by way of compensation and damages as a result of land being appropriated for highway purposes, the following elements are to be considered: (1) The fair and reasonable market value of the property taken; and (2) the reduced value of the residue, after severance of the property taken and without deduction for benefits, except special, if any, and considering the effect upon such residue of the uses for which the appropriation is made.

"2. The inquiry being thus limited, examination of witnesses should be confined in the establishment of these elements, saving always the right to liberal cross-examination."

The apparent confusion or misconception seems to have arisen by reason of a statement in the opinion of the case appearing at page 183 of the report as follows:

"It follows, therefore, that there are but three questions to be propounded to a witness, subject to the right of cross-examination residing in the adverse party, namely, (1) what is the fair and reasonable market value of the area sought to be appropriated; (2) what is the fair and reasonable market value of the residue prior to the appropriation; and (3) what will be the fair and reasonable market value of the residue after the appropriation, the difference between the two latter figures reflecting the damages. 15 Ohio Jurisprudence, 841, Section 151, and authorities therein cited."

It is the view of this court that it was not intended by the writer of the opinion, which includes the foregoing statement, that the parties should be restricted to only certain prescribed questions in the interrogation of witnesses, nor is it intended by this court to undertake to direct the manner in which the testimony

should be elicited from the witnesses in trials involving the appropriation of property.

It is the considered view of this court that counsel for the respective parties should not be limited or restricted to any prescribed method in the examination of witnesses, but, to the contrary, should be free to pursue a course deemed best suited by them to develop fully the testimony and all competent evidence relevant to the issues involved in each particular case, subject only to the established rules governing the trial of civil actions generally. 15 Ohio Jurisprudence, Eminent Domain (Evidence), 888, Sections 196 to 198.

By reason of the errors referred to herein, the judgment of the Court of Common Pleas is reversed and the cause remanded to that court for a new trial.

*Judgment reversed and cause remanded.*

FESS and CONN, JJ., concur.