IN RE APPROPRIATION FOR HIGHWAY PURPOSES: NOBLE, DIR. OF HIGHWAYS, APPELLANT, v. FLOWERS ET AL., APPELLEES.

(No. 207—Decided February 10, 1959.)

*Mr. William Saxbe,* attorney general, and *Mr. Willis E. Wolfe, Jr.,* for appellant.

*Mr. William E. Knepper* and *Mr. Wray Bevans,* for appellees.

RADCLIFF, J. This is an appeal from a judgment entered pursuant to the verdict of a jury in an appropriation case. Throughout this opinion, for the sake of clarity, we will refer

to the appellant in this case as the state and the appellees as the property owner. This is deemed necessary because in the trial court the property owner was designated the appellant.

The state, as part of its program to improve State Route No. 104 in the southwest portion of Pike County, filed its resolution and finding to appropriate a small portion of the property owner's farm consisting of 106 acres. State Route No. 104 runs roughly north and south, parallel to and between the Ohio-Erie Canal and the Scioto River. As a part of the highway improvement the state changed the direction of the drainage of a romantically named swamp called "Gander Hook." Historically, it drained south, now it drains north into the Ohio-Erie Canal, under State Route No. 104 by culvert, and thence across a portion of the Scioto River bottom into the river. After the original filing of the resolution and finding on behalf of the state it became necessary to amend the original resolution and finding to add parcel 15X to the taking; in fact, there were three amendments. Parcel 15X is the drainage ditch that runs approximately 600 feet from the culvert under State Route No. 104 in an easterly direction to the river.

The farm of the property owner has between 27 and 40 acres of bottom land between State Route No. 104 and the Scioto River. The remainder of the farm is on the west side of State Route No. 104 and the Ohio-Erie Canal and is quite hilly. The portion of the farm between the road and the river is perfectly flat and the most productive part thereof.

Trial was had, and the jury assessed the compensation to the property owner at $10,900. The verdict was broken down as follows:

| | |
|---|---|
| Compensation for land | $    900.00 |
| Damages to the residue | 10,000.00 |
| Total | $10,900.00 |

A motion for a new trial was overruled, and this appeal was perfected. The state urges three assignments of error.

1. The court erred in admitting certain testimony offered on behalf of the property owner, to which the state of Ohio objected.

2. The court erred in refusing to give the state of Ohio's

written request for special instruction before argument, being special instruction No. 2.

3. The judgment is not sustained by sufficient evidence.

The evidence referred to in the first assignment of error consisted of testimony of certain witnesses called by the property owner. The testimony that is especially abhorrent to the state was elicited from these witnesses on cross-examination. The state contends that when the witnesses explained the damage figure as to the residue of the property they engaged in speculation, and that this resulted in prejudicial error against the state. There is no need to review all the cases covering eminent domain in this state beginning with the *Ball case* (*Cleveland & Pittsburgh Rd. Co.* v. *Ball*, 5 Ohio St., 568), as we are all familiar with the general principles.

Where there is a partial taking, there is no question that the owner is entitled to be compensated for the property taken and for the damage to the residue occasioned by the taking. This damage has to be actual and real and cannot be speculative in nature. The position of the state in this case is that the witnesses all engaged in speculation that the flat and highly productive piece of land owned by the property owner east of State Route No. 104 and extending to the river would ultimately erode away and be a total loss, and that, therefore, all that evidence as to damages should be stricken from the record. It must be remembered that the admission or rejection of evidence in appropriation proceedings is primarily a matter of discretion with the trial court, and reviewing courts have been loathe, in the absence of abuse of that discretion, to tamper with the results. The state takes the position that all the property owner's witnesses said that the change in the drainage system and the fact that a deep ditch now ran along the northern boundary of the property owner's highly productive tract would cause it to erode, due to the pressure of the water from Gander Hook; but this contention, after a careful reading of the testimony, is not borne out. The witnesses stated that they based their opinions as to the damage to the residue upon the fact that the river bank had been broken by the drainage ditch and that the river would exert the eroding and damaging pressure. A witness for the state testified that the Scioto River was moving its bed or chan-

nel in a westerly direction and had been in that process for some period of time. It was only reasonable to think that a stream which is susceptible to flooding conditions two or three times each year will accelerate its channel relocation through a break made in the natural bank of the river. In fact, there is testimony in the record to show this process has already begun, and the jury, on its view, could not help but see, in spite of any admonition on the part of the trial court, what was in process and would in all probability continue. We do not feel that there was any invalidity in the premise upon which these witnesses testified they felt the damage would result to the remaining part of the tract of land that lays between the state route and the river. There were certain photographs admitted into evidence over the objections of the state, that are covered by this assignment of error. However, other photographs of the same area, and part of a series, were not objected to by the state, consequently the error, if any, is deemed to have been waived by the state. In support of our position on this matter we wish to refer to the following authorities: *Lorain Street Ry. Co. v. Sinning*, 17 C. C., 649, 6 C. D., 753; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Lindner*, 40 Ohio App., 265, 178 N. E., 322; *Ohio Public Service Co. v. Dehring*, 34 Ohio App., 532, 172 N. E., 448; *Rockwell v. Ohio Turnpike Commission*, 98 Ohio App., 199, 128 N. E. (2d), 834; *In re Appropriation by Ohio Turnpike Commission*, 164 Ohio St., 377, 131 N. E. (2d), 397 (particularly paragraphs two and eight of the syllabus); and 19 Ohio Jurisprudence (2d), 597, Section 173. We do not feel that the witnesses were permitted to speculate, nor do we feel that the court in any manner abused its discretion in admitting the testimony that was attacked in the state's first assignment of error; and that assignment is not well taken.

The second assignment of error has to do with the refusal to give the state's special instruction No. 2 reading as follows:

"I instruct you that you should not award any damages in this case based on the possibility that the proposed channel being constructed by the Department of Highways may at some time in the future erode and go beyond the right of way limits as set out and described as parcel 15X in the third amended resolution and finding filed in this case.

"If the channel would go beyond the right of way limits described as parcel 15X in the third amended resolution and finding it would constitute an additional 'taking' for which compensation would have to be paid."

The court in its general charge properly instructed the jury that it could not engage in speculation when considering the question of damage to the residue of the property owner's farm and refused to give the requested instruction because "it went too far." We are inclined to agree with the trial court's ruling. Had the special instruction consisted of only the first paragraph we might, by a strained interpretation, have said that it must be given, but the addition of the second paragraph makes a different proposition. In support of this we would like to include the following quotation from Jahr on Eminent Domain, 73, Section 50:

"The just compensation in cases involving partial taking is generally the value of the part taken plus all the damages which the residue of the property suffers including a diminution in the value of the remainder by reason of the lawful use to which the portion being acquired will be put. Anything less than the foregoing would encroach upon the constitutional guarantee of just compensation."

This court has spoken on this question in *Chesapeake & Hocking Ry. Co.* v. *Snyder*, 38 Ohio App., 279, 175 N. E., 750. In that case, Judge Mauck, speaking for the court, said, at page 285:

"The measure of the plaintiff's recovery was, therefore, the difference between the value of the residue of his farm before it was appropriated and the value immediately after the appropriation, and its value immediately after the appropriation had to be determined after the jury had taken into consideration *the most damaging situation that might result* from the lawful improvements to be constructed." (Emphasis added.)

The entire opinion of Judge Mauck could well be quoted as authority in this matter. Here again the state apparently misinterpreted the testimony of the witnesses who on cross-examination said they felt that the productive bottom land would be eroded away but that this erosion would be done by the river and

not the flow of water that originated in Gander Hook. The following additional authorities are cited: *Lorain Street Ry. Co.* v. *Sinning, supra* (17 C. C., 649); *Rockwell* v. *Ohio Turnpike Commission, supra* (98 Ohio App., 199), the fourth paragraph of the syllabus; *In re Appropriation of Easement for Highway Purposes,* 93 Ohio App., 179, 112 N. E. (2d), 411; and 19 Ohio Jurisprudence (2d), 594, Section 171.

We are of the opinion that the court's general charge as to the awarding of damage and warning the jury that it must not engage in speculation was proper, and that the court properly rejected the state's special instruction No. 2; and, therefore, the second assignment of error is not well taken.

The third assignment of error goes to the weight of the evidence. We feel there is ample evidence to sustain the verdict arrived at by the jury in this case. It was well within the limits of the testimony given by the witnesses on behalf of the property owner and does not appear to be excessive. The third assignment of error is not well taken. The judgment herein appealed from should be, and hereby is, affirmed.

*Judgment affirmed.*

GILLEN, P. J., and COLLIER, J., concur.